No. 35,929

VERNON M. CLARK, *Appellee,* v. GEORGE F. SURMEIER and MRS. GEORGE F. SURMEIER, *Appellants.*

(139 P. 2d 372)

Opinion filed July 10, 1943.

*J. H. Jenson,* of Oakley, argued the cause for the appellants.

*Jesse I. Linder,* of Gove, argued the cause, and *C. R. Holland,* of Russell, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment granting a writ of assistance to put the appellee in possession of a tract of Gove county land.

The pertinent facts were these: On and prior to March 1, 1941, one A. W. Marken owned the land in question, but it was then being subjected to foreclosure proceedings in an action by the Federal Land Bank of Wichita against Marken for an indebtedness secured by a mortgage on the property.

On March 1, 1941, Marken executed to George F. Surmeier a written lease of the land for two years expiring March 1, 1943, with this qualification:

"It is further agreed and understood by both parties that the above farm is under foreclosure at this time. This lease will expire at the expiration of the redemption period."

Judgment in favor of the Federal Land Bank was entered in the foreclosure action on April 17, 1941, and pursuant to an order of sale the land was sold on July 28, 1941, subject to the usual redemption period of eighteen months which expired on January 28, 1943— and which thereby shortened the duration of Surmeier's lease to that date.

It is inferable that the Federal Land Bank as plaintiff had purchased the property at the foreclosure sale and held the certificate of purchase therefor.

The judgment in foreclosure and the order of confirmation both provided that at the proper time the purchaser or his assignee would be entitled to a sheriff's deed conveying the premises, which when issued would entitle the grantee to full and immediate possession of the premises; and should such possession be refused by the judgment debtor or any one claiming under him by right acquired subsequent to the commencement of the foreclosure suit, such purchaser, his heirs, successors or assigns would be entitled, upon verified application therefor, to a writ of assistance to oust all such persons from the premises and to place the lawful applicant in quiet and peaceable possession.

On or about August 17, 1942, the present appellee, Vernon M. Clark, Jr., addressed to the Federal Land Bank of Wichita a written offer to purchase the land for $9,600 on stated terms; and in that offer he said:

"I . . . understand that there is an agricultural lease on the land which expires on August 1st, 1943, and agree to purchase this land subject to this lease, except lease is to be assigned, or canceled and rewritten by and between this purchaser and present tenant."

It would appear that prior to the receipt of that offer the Federal

Land Bank had assigned its certificate of purchase to the Federal Farm Mortgage Corporation, and on September 17, 1942, a written agreement for the purchase of the land was executed between the latter corporation and Clark, to be consummated when the corporation had acquired title to the property. The agreement referred to the existing tenancy of Surmeier thus:

"It is further agreed by and between the parties that [party] of the second part [Clark] shall take possession of said real estate at the time he notifies party of the first part that he has accepted title thereto; it is further understood that party of the second part shall make his own arrangements with the tenant for possession of said real estate;  . . ."

During the autumn of 1942 Clark and Surmeier had some negotiations touching the planting of wheat, and for an exchange of possession of the farms then occupied by them, but they reached no definite and binding agreement further than that Surmeier might plant the wheat ground and that Clark would respect Surmeier's right to his share of that crop in the harvest season of 1943 notwithstanding the tenancy under his lease of 1941 from Marken would expire on January 28, 1943. One R. H. West, of Oakley, who seems to have participated in the negotiations between Clark and Surmeier, drafted a lease of the farm from Clark to Surmeier, dated August 20, 1942, for a term of one year beginning August 1, 1942, and ending August 1, 1943. Surmeier signed this lease but Clark declined to do so because it contained terms and conditions which did not suit his purposes—one of them being his intention to occupy the property with his family in the spring of 1943, and that he had no intention to recognize Surmeier's tenancy after that time except in respect to the wheat ground planted by Surmeier in the autumn of 1942.

Surmeier declined to surrender possession on Clark's demand, and the latter applied to the district court for the writ of assistance already authorized in the judgment in the foreclosure suit of the *Federal Land Bank v. Marken,* and in the court's subsequent order of September 13, 1941, confirming the sale in foreclosure.

Clark's application for the writ alleged the pertinent facts. Surmeier filed a motion to quash the writ, alleging that for the crop year of 1942-1943 he held an agricultural lease from the Federal Land Bank and from the Federal Farm Mortgage Corporation, which lease would expire on August 1, 1943.

Surmeier also pleaded that he had not been made a party de-

fendant in the foreclosure action and no judgment had been rendered against him.

He also alleged that in August, 1942, the Federal Land Bank and the Federal Farm Mortgage Corporation, through their authorized agent and employee, R. H. West, *gave* him an agricultural lease of the premises expiring August 1, 1943.

Surmeier further alleged that although Clark, applicant for the writ, did hold a contract to purchase the property, such contract was subject to the lease held by Surmeier from the two federal corporations.

Surmeier further alleged that ever since August 1, 1942, Clark knew that he had a lease of the premises, to expire August 1, 1943, and that about August 15, 1942, Clark had acknowledged its existence in writing—(apparently the excerpt from his written offer of August 17, 1942, to buy the property quoted above).

It was further alleged in the motion to quash the writ of assistance that Clark was not a party to the foreclosure action, nor was he the successor or assignee of the holder of the sheriff's deed, and that he had no right to demand the aid of a writ of assistance; and that neither the Federal Land Bank nor the Federal Farm Mortgage Corporation had requested, directed or authorized the issuance of the writ, and that it was wholly void and without justification and that it should be quashed and held for naught.

On the issues thus raised, the cause was tried by the court. The parties introduced their evidence, part of which was oral testimony, and part was documentary. Other evidence consisted of correspondence which passed between Mrs. Surmeier and certain officers and agents of the Federal Land Bank, the Federal Farm Mortgage Corporation, and R. H. West, local secretary-treasurer of the National Farm Loan Association. The apparent purpose of this correspondence was to prove that the Surmeiers had secured a one-year's lease of the premises from the holder of the certificate of purchase at the foreclosure sale.

The trial court found generally in favor of the appellee, and directed that the writ of assistance should issue as prayed for—except in respect to the acreage planted to wheat by Surmeier in the autumn of 1942. Proceedings were stayed pending an appeal to this court on the giving of a bond with the usual guaranties that the appeal would be prosecuted without delay, that no waste would be committed or suffered, and that if the judgment should

be affirmed respondents would pay the value of the use and oc-cupancy of the property from the date of the undertaking until the delivery of the property together with all damages and costs which may be awarded herein. Five days were given in which to furnish the required bond, and the matter is now brought here for review.

The formal specification of error refers to the admission and exclusion of testimony, the trial court's ruling that it had juris-diction to try the issues of fact, and the overruling of respondents' motion to quash the writ of assistance. However, respondents begin their argument with a reference to the effort of the Surmeiers to obtain a lease from the Federal Land Bank which went no further than to bring a response from the bank that the Surmeiers should discuss the matter with R. H. West of Oakley. West called on Surmeier and informed him that the bank had purchased the land. In behalf of the bank West collected the rent for 1942; and according to Surmeier West told him he could occupy the land until August 1, 1943, on the same terms as he had held it under his lease from Marken. But it was not shown that West had authority to lease the land to Surmeier; and indeed the evidence which the trial court chose to believe was to the contrary. The letter of Mrs. Surmeier, of August 8, 1942, to George Ward, local agent for the Federal Land Bank, in which she expressed the desire that "we [her husband and herself] would like to rent it [Marken land] for another year" was acknowledged by Ward on August 11, 1942, in part thus: "I have [referred] your letter . . . to the Farm Service Division of the Federal Land Bank for reply. You no doubt will hear from them within a few days. . . ." Shortly thereafter, C. E. Hoke, of the lease section of the bank wrote to Mrs. Surmeier to say that her letter of August 8 had been referred to his department, and he advised her to discuss the matter with R. H. West, secretary-treasurer of the local National Farm Loan Association, at Oakley, who was fully familiar with the land and conditions existent at the time.

About the same time, on August 13, 1942, Hoke wrote to West and enclosed therewith a copy of Mrs. Surmeier's letter and a copy of his reply to her. Hoke added, in part:

"After you have discussed this matter with Mrs. Surmeier, we will be glad to have your report, with recommendation for handling."

West made no report pursuant to Hoke's letter of August 13. Instead he drafted a lease from Clark to Surmeier, dated August 20, 1942, to which Clark would not assent. So it is clear that if West did make an oral promise on behalf of the Federal Land Bank to Surmeier that the latter might hold the farm for another year, he transcended his authority. Moreover, his effort to bring about a lease of the land from Clark to Surmeier by drafting the lease of August 20, 1943, which Surmeier signed but which Clark declined to sign, was quite inconsistent with any theory of West's agency authorizing him on the bank's behalf to make an oral contract with Surmeier for the crop season ending August 1, 1943. Furthermore, at the trial, C. F. Drake, an officer of both the federal corporations, testified that West had no authority to make an oral contract to lease land for either of them.

Counsel for respondents call attention to the language in Clark's offer of August 17, 1942, to the Federal Land Bank, in which he stated that he *understood* that the land was leased until August 1, 1943, and that he was willing to purchase it subject to such lease. But that understanding was based on erroneous information. Moreover, the contract of purchase which followed was not made on Clark's offer to the bank, but between Clark and the Federal Farm Mortgage Corporation; and the preliminary negotiations—whatever they were—were not included in the contract of purchase which was complete in itself; and its recital which deals with Surmeier's tenancy is quoted above and it is not susceptible of a construction that Clark was purchasing the property subject to a tenancy of Surmeier which was not to expire until August 1, 1943.

Counsel for respondents project a theory of estoppel which should bar Clark's right to the writ of assistance. We discern no basis for this theory. It is also urged that Clark should be denied the aid of a writ of assistance to secure possession of any part of this section of land because he asked for possession of all of it, including the wheat ground planted by Surmeier in the fall of 1942, and the court found that he was not entitled to be put into possession of the wheat ground. It is a novel theory, indeed, that if a litigant asks the court for more relief than he is entitled to, he is to be denied any redress whatsoever. Somewhere among eastern potentates of a century or two ago, perhaps it was in the *Arabian Nights*, there was some arbitrary rule to that effect, but it has no place in our jurisprudence. (*Estey v. Southwestern Gas Co.*, 129 Kan. 573, 575, 283 Pac. 628, and syl. ¶ 2.)

It is also urged that a writ of assistance does not issue except where the applicant's right thereto is substantially free from doubt, and the case *Lundstrum v. Branson,* 92 Kan. 78, 139 Pac. 1172, is cited. We have no disposition to modify the rule stated in that case, nor in the authorities referred to in that opinion. But an applicant's right to the writ is not rendered doubtful merely because a tenant is determined to overstay his term upon any ill-founded excuse. Surmeier leased this land from Marken when it was being subjected to foreclosure. His lease was therefore taken subject to the rule of *lis pendens.* And indeed the very text of the lease under which he was permitted to occupy the property advised him that his right of tenancy would terminate whenever the period of redemption from the mortgage foreclosure sale would expire.

It is next contended that the district court was without jurisdiction to try the questions raised by respondents' motion to quash the writ—that the applicant's only recourse was by the institution of detainer proceedings before a justice of the peace! This point is clearly untenable. Both the judgment in the foreclosure action and the court's order confirming the sheriff's sale declared that at the proper time the purchaser, his heirs, successors or assigns would be entitled to a writ of assistance to place him in quiet and peaceable possession.

There is nothing further in this record worthy of comment, and the judgment is affirmed.